UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Friedman and Lorish
Argued at Alexandria, Virginia


JANETTE M. DAVIS, ET AL.

MEMORANDUM OPINION[*] BY
v.       Record No. 0274-24-4        JUDGE MARY BENNETT MALVEAUX
FEBRUARY 4, 2025

WENDY GARDINER, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

Grace Clagett (Heba K. Carter; J. Andrew Baxter; General Counsel,
P.C., on briefs), for appellant.

Caroline V. Davis; Michael J. Carita; Edward P. Trivette (David L.
Hauck; Duane, Hauck, Davis, Gravatt & Campbell, P.C.;
LevineCarita PLC; Kalbaugh, Pfund & Messersmith, P.C., on
briefs), for appellees.


Janette and William Davis sued their former neighbors—Jonathan and Randee Wittkopf,

Wendy Gardiner, John Giordino, Judith Christy, and Jane Doe (collectively, "the

Neighbors")—alleging common law civil conspiracy as well as conspiracy to harm them in their

reputation, trade, or business, in violation of Code §§ 18.2-499 and -500.[1] The circuit court

sustained the Neighbors' pleas in bar and dismissed the complaint. On appeal, the Davises

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Upon the Davises' motion, the Wittkopfs were dismissed as appellees; the case style
was amended to reflect the dismissal. *See Davis, et al. v. Wittkopf, et al.*, No. 0274-24-4
(Va. Ct. App. Aug. 14, 2024) (order). Jonathan Wittkopf's actions remain relevant to this appeal
only because they provide a basis for holding the other Neighbors liable for the alleged
conspiracy to accomplish an underlying tort. *See La Bella Dona Skin Care, Inc. v. Belle Femme
Enters., LLC*, 294 Va. 243, 256 (2017) ("[A]n action for civil conspiracy will not lie unless the
predicate unlawful act independently imposes liability upon the primary wrongdoer. Only then
can that liability be spread to the remaining coconspirators."); Code § 18.2-499 (providing that
violators "shall be jointly and severally guilty" of a misdemeanor).

contend that the circuit court erred in holding that their causes of action accrued outside the applicable statute of limitations. For the following reasons, we affirm the circuit court's judgment in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

"Where no evidence is taken in support of a plea in bar . . . the appellate court[,] upon review, consider[s] solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022) (last alteration in original) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)).

The Davises purchased property in the Century Oak neighborhood of Fairfax, Virginia and removed trees, performed renovations, and installed a video camera security system. This displeased the Neighbors and caused them to aim "extreme animosity, open jealousy, hostility, and harassment" towards the Davises.

### A. The Nighthawk Business

In April 2016, Janette Davis entered an independent contractor agreement with Nighthawk Security Systems, Inc. ("Nighthawk") to sell home security and entertainment products.[2] To kickstart sales, Janette sent an email advertising Nighthawk products to a listserv for the Century Oak community on May 27, 2016.

On May 31, 2016, a group of neighbors, including Christy, gathered in front of the Davises' property "loitering, aggressively gesturing, and otherwise participating in nuisance-like behavior." The Davises sent Christy a no-trespass letter the next day.

---

[2] For our limited purpose of reviewing the circuit court's ruling on the plea in bar, we assume without deciding that Janette's independent contractor agreements constituted "businesses" within the meaning of Code §§ 18.2-499 and -500 and relevant caselaw.

On June 4, 2016, Christy sent two emails to the Century Oak listserv. To the first, Christy attached Janette's May 27 advertisement email, and wrote that "the woman who sent this email below to all of us . . . is the same woman sending the certified letters to us dog owners about taking us to court for 'trespassing' on her property." In the second email, Christy "falsely implied that the [Davises] were criminally harassing . . . Christy." On June 23, 2016, Christy sent another email stating that the Davises "must be stopped. I really want to see them arrested for harassment."

The June 2016 emails demonstrated that "Christy was organizing and encouraging neighbors to harass, stalk, bully, injure and defame the Davises," and "[t]he extent of this harassment further expanded to include damage to the Davises' business ventures and professional reputations." The emails "dissuaded current and potential clients from purchasing Nighthawk home security and entertainment products from [Janette], thus interfering with her livelihood and ability to earn a living."

### B. The Neighbors' Personal Attacks

Also in June 2016, the Neighbors began using email and social media outlets, including Nextdoor,[3] to craft, disseminate, and generate responses to "false and defamatory statements" about the Davises. The Neighbors communicated with each other in creating and making these

---

[3] Nextdoor is "a social media platform that acts as a hyperlocal social networking service for neighborhoods by creating . . . virtual 'bulletin boards' where community members can share information, make recommendations, post classified ads, and generally connect with one another." Nextdoor community pages are run by "Leads" who have "the power to delete posts or replies to a post, or to close posts entirely," as well as to appoint other community members to become Leads. The site itself provides "little oversight" in the appointment or supervision of Leads. The Century Oak community has its own Nextdoor page, which "includes around 360 members, and over 15,000 members consisting of surrounding neighborhoods."

By September 2017, Gardiner, Wittkopf, and Giordano had all become Leads for the Century Oaks Nextdoor page. They used their power as Leads to remove "nearly all" content posted by the Davises, while allowing other content about the Davises to remain visible.

statements and responses. These statements were "designed to belittle, harass, and falsely accuse the [Davises] of committing criminal activity," and "caus[ed] irreversible damage to both their personal and professional reputations." These statements targeted the Davises personally,[4] but did not specifically mention the Davises' occupations or business.

## C. The Real Estate Business

In September 2017, Janette started a real estate business by entering an independent contractor agreement with RE/MAX Allegiance ("Re/Max"). The Davises both provided financial backing to the real estate business, and they both have a financial interest in its success. Janette used flyers and mailers to advertise and promote the real estate business in Century Oak and the surrounding communities.

Janette also created an official business profile on Nextdoor, titled "Re/max," which she used for networking and providing real estate information to prospective clients. From December 26, 2017 to January 5, 2018, Janette communicated with five prospective clients about their real estate needs via Nextdoor.

On January 4, 2018, Janette received an email from Nextdoor stating that the information she provided to prospective real estate clients had been "reported and subsequently removed" by the Neighbors. The Neighbors "falsely claimed that the posts were removed because [Janette] was impersonating a real estate agent and was fraudulently providing false information to prospective clients."

---

[4] For example, in September 2017, Christy and Gardiner used email to jointly draft a Nextdoor post that identified the Davises and alleged, among other things, that "these 2 people have followed children home, yelled at people when they walk by their house, used the middle finger at people . . . and . . . other frightening behaviors." Christy and Gardiner then sent an email to at least 28 recipients recommending that the recipients respond to the post. Gardiner created a total of seven similar posts, and Wittkopf forwarded one such post to multiple recipients via email. In January 2018, Wittkopf created a post accusing the Davises of "harassing . . . kids and driving through the neighborhood filming neighbors" and calling them "[s]ick and twisted."

On January 5, 2018, Wittkopf published a post to the Century Oak Nextdoor page titled "Fake Account – Real Estate Agent Posing As User." The post "falsely informed the community that [Janette]'s posts were from a fake account set up to attract real estate leads" and "referred to [Janette]'s posts as spam and cautioned neighbors about using her real estate services." Wittkopf's post "caused catastrophic and irreversible damage to [Janette]'s real estate business by deterring potential clients from utilizing her services, thus resulting in commission losses and a significant impact on [her] ability to earn a living as a [r]ealtor." Though the Davises reported the January 5 post, the Neighbors voted not to remove it.

Wittkopf also privately messaged individuals with whom Janette had communicated about real estate services on Nextdoor. On January 5, 2018, Wittkopf informed an individual who was seeking a real estate agent: "One of the real estate agents that responded to your post lives in our community and has been terrorizing many pedestrians, including minors. Thought you should know. Happy to give you more specifics if needed." On January 7, 2018, a Century Oak resident messaged Wittkopf to ask whether Janette is "actually a real estate agent." Wittkopf responded that Janette "is now a realtor" and that he had "read her bio – to include volunteering at an animal shelter. Sickening. One of our neighbors (rightfully) joked that she probably volunteered to help put them down. Received her flyer today. I don't have hate in my heart but do hate them."

On January 13, 2018, Janette's real estate mailers were delivered to the Century Oaks neighborhood. That same day, Wittkopf posted on Nextdoor:

> Hello friends and neighbors, Does anyone know who the head broker is at the Re/Max Reston Office? I just received a flyer from a new agent who is known in our neighborhood as a bully. Her harassment of other neighbors – specifically dog walkers and children – is well documented. I would hate for unknowing sellers to select this person as an agent and would like to inform Re/Max of the individual and her behavior. Thank you!

Gardiner and Christy "thanked" this post. The post "generated many comments, replies, and re-posts, especially by other [r]ealtors, that kept the post trending at the top" of the Nextdoor community page. Though the Davises reported the post to Nextdoor, the Neighbors voted not to remove it.

On January 18, 2018, Doe made an anonymous call to Mark Griffin, the broker for the Reston, Virginia Re/Max office. Doe informed Griffin that she lived in the Century Oak community and was "calling to file an anonymous complaint against" Janette. By placing the call, Doe intended to cause the termination of the contractual relationship between Janette and Re/Max.

On January 30, 2018, Christy published a Nextdoor post titled "Preventing unwanted real estate agents in your home for sale." Christy advised people currently selling a house, or who were considering listing their home, to "inform [their] listing agent that [they] want to deny access to a named agent." Christy further advised:

> [t]o prevent that unwanted agent into [sic] your home, you may want to consider sending the agent, as well as the real estate office employing that agent, a legal "no trespassing" letter to ensure that agent won't enter, or they will face legal action. Many of us in this neighborhood are familiar with receiving "no trespassing" [sic] letters for a child stepping on a yard to retrieve his ball, a shoe toughing [sic] a yard while walking along the sidewalk, a dog's paw stepping on a yard or even no trespassing at all, so this should not be a surprise to an agent, should that agent receive the same.

Christy's post "led to irreversible damage to [Janette]'s professional reputation and real estate business."

In total, the Neighbors' "targeted attack decimated [Janette]'s career as a [r]eal [e]state [a]gent" and "caused irreparable and unmeasurable mental, emotion[al], and physical damage to both" of the Davises.[5]

## D. The Davises' Lawsuit

On December 30, 2022, the Davises filed a complaint against the Neighbors alleging common law civil conspiracy ("Count I"), and conspiracy to injure another in business in violation of Code §§ 18.2-499 and -500 ("Count II"). Christy filed a demurrer and a plea in bar. The circuit court sustained the demurrer and granted the Davises leave to file an amended complaint.

On June 30, 2023, the Davises filed an amended complaint, including the same two counts. Under Count I, the Davises alleged the Neighbors "acted in concert to defame" the Davises and

> conspired to interfere in the business interests of Mr. and Mrs. Davis by repeatedly posting inflammatory and inaccurate information on public forums regarding the Davises generally, and Mrs. Davis's fitness, character and qualifications as a [r]eal [e]state [a]gent specifically. These acts, taken in concert, effectively damaged both Mr. and Mrs. Davis's personal and professional reputations and significantly hindered Mrs. Davis's ability to conduct and grow her real estate business.

The Davises claimed they suffered "immense humiliation and grave irreversible damage to their personal and professional reputations" as well as "monetary damages in the form of lost business." Among other damages, the Davises claimed "compensatory damages, to include . . . loss of profits."

---

[5] The Davises further allege that similar activity occurred in February 2018 and beyond. These alleged actions are not relevant to our analysis here, because we look only for the first instance of relevant injury when determining when a cause of action accrued. *See* Code § 8.01-230 ("In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property.").

Under Count II, the Davises alleged that the Neighbors' "actions of defamation and tortious interference caused actual harm to [Janette]'s real estate business and professional reputation" and the Neighbors "acted in concert to willfully and maliciously injure [the Davises] in their reputation and Business (trade)." The Davises suffered "immense humiliation and grave damage to their personal and professional reputations" as well as "monetary damages in lost business."

The Neighbors filed pleas in bar, asserting that the action was barred by the relevant statute of limitations, and demurrers. At a hearing on the pleas in bar, the circuit court found that "a fair reading of the facts set forth in the amended complaint has the cause of action accruing by June 4th of 2016," and "even if [the complaint] were read to conclude that the cause of action accrued in September of 2017, it's still outside of a five-year window of the filing." Accordingly, the circuit court granted the pleas in bar "based on the case not being timely filed within the required statute of limitation period," and dismissed the case.

This appeal followed.

## II. ANALYSIS

The Davises contend that the circuit court erred in determining that their causes of action accrued outside the limitation period. Instead, the Davises argue, their cause of action accrued in January 2018 when the Neighbors "separately began targeting" the real estate business. We agree with the Davises, but only as relates to their cause of action for common law civil and statutory conspiracy to interfere with the real estate business.[6]

---

[6] The circuit court held that a "five-year window" is applicable to this cause of action. The Neighbors argue a different limitation period applies with respect to Count I's claim related to defamation. We agree only insofar as Count I alleges a conspiracy to defame the Davises. *See* Code § 8.01-247.1. To the extent Count I alleges a conspiracy to interfere with a business, the Neighbors have not assigned cross-error to the circuit court's ruling that a five-year limitation period applies and we will not reconsider that ruling here. *See Maine v. Adams*, 277 Va. 230,

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg*, 298 Va. at 216 (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "The party asserting the plea in bar bears the burden of proof." *Id.* Appeal of a decision on a plea in bar of the statute of limitations involves a question of law that is reviewed de novo. *Robinson v. Nordquist*, 297 Va. 503, 513 (2019).

"[D]etermining the boundaries of a cause of action" depends heavily "on the factual context of each case." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 125 (2017). This case requires us to identify which, among multiple occurrences of broadly similar harms, triggered the accrual of the Davises' causes of action.

## A. Count I: Common Law Conspiracy

"[I]n Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*, 273 Va. 68, 80 (2007). "Thus, under the common law in Virginia, a conspiracy claim . . . would include the[] same elements of proof" as those of the underlying tort. *Id.* at 81. "No cause of action exists without the resulting injury, and the damage produced must arise as the effective result of the conspiracy." *Gallop v. Sharp*, 179 Va. 335, 338 (1942). "In other words, actions for common law civil conspiracy . . . lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014).

Consequently, "in cases of civil, as opposed to criminal, conspiracy, the agreement itself does not create liability at law." *Blackwelder v. Millman*, 522 F.2d 766, 775 (4th Cir. 1975) (applying Virginia law). Rather, because

> [c]ivil liability rests on different grounds, . . . unless actual damage
> has resulted from something done by one or more of the
> conspirators in furtherance of the object of the conspiracy, no civil

242 (2009) (noting that "when a party fails to assign error to a particular holding by the circuit court, that holding becomes the law of the case and is binding on appeal").

> action lies against anyone; but, if a conspiracy is conceived and executed, and a private injury results, the one so injured has a right of action against the conspirators.

*Id.* (quoting 15A C.J.S. *Conspiracy* § 6 (1967)). So in order for a cause of action for civil conspiracy to accrue, a defendant must have "completed [his] alleged conspiracy" by completing the underlying tort, and "actionable damages" must "exist in any substantial or ascertainable degree." *Id.* at 776-77 (emphases omitted).[7]

Under Count I, the Davises claim they were harmed in two distinct ways: damage to their "personal and professional reputations," and "lost business." Their allegations sound in defamation as well as tortious interference with a business expectancy, so we take the amended complaint to allege common law conspiracies to commit these two separate, underlying torts.[8] But as the cause of action is for common law civil conspiracy, we must focus on when the damage occurred. Each of the Davises' torts involves a different type of damage: while defamation damages a person's reputation, tortious interference damages a business. We

---

[7] Applying *Gallop*, the court in *Blackwelder* held that Blackwelder's cause of action for conspiracy to defraud him could not accrue while the requisite events to complete the underlying tort, fraud, were "mere contingencies," and thus his cause of action was "as a matter of Virginia law not time-barred" because it "did not accrue until defendants completed their alleged conspiracy, by actions occurring well within the limitations period." 522 F.2d at 776-77. Here, a mere agreement by the Neighbors to injure the Davises, whether personally or in their business, would not create a cause of action for civil conspiracy to carry out any tort until all elements of those torts were present and the Davises consequently sustained some injury. *Id.*; *see also Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 77 (1987) (holding that a cause of action for injury to a business accrued when the business "incurred some, if not all, the damages resulting from the alleged conspiracy" (emphasis omitted)).

[8] Our Supreme Court has recognized "that a plea in bar 'constitutes [either] a complete defense to the [complaint], or to that part of the [complaint] to which it is pleaded.'" *Smith v. McLaughlin*, 289 Va. 241, 252 (2015) (alterations in original) (quoting *Campbell v. Johnson*, 203 Va. 43, 47 (1961)). Accordingly, to the extent an issue of fact prevents a party from pursuing certain theories of recovery, a plea in bar presents only a partial bar to those specific theories. *Id.* Here, the amended complaint's admittedly broad allegations "can be grouped into two categories," *id.* at 250, defamation and tortious interference with a business expectancy, so we evaluate the plea in bar as against each theory of recovery.

therefore determine when the cause of action for common law civil conspiracy to accomplish each underlying tort accrued by identifying when each type of damage occurred, and then determine whether the cause of action is time-barred by applying the relevant limitation period for each tort. *See id.*

### 1. Defamation

"Every action for injury resulting from . . . defamation shall be brought within one year after the cause of action accrues." Code § 8.01-247.1. "Any cause of action that a plaintiff has for defamation accrues on the date that the defamatory acts occurred." *Askew v. Collins*, 283 Va. 482, 487 (2012).

The Davises' amended complaint alleges that the Neighbors "acted in concert to defame" them and that they suffered "immense humiliation and grave damage to their personal and professional reputations" as a result. The first time such alleged damage occurred was in June 2016, when Christy's emails to the neighborhood listserv "falsely implied that the [Davises] were criminally harassing" her and caused "damage to the Davises' . . . professional reputations." This first defamatory act took place well outside of one year before the Davises' initial complaint was filed on December 30, 2022.[9] Accordingly, to the extent that the amended complaint states a cause of action for common law civil conspiracy to defame the Davises, that claim was not timely filed and the circuit court did not err in dismissing it.

---

[9] It is true that an earlier defamatory statement for which a cause of action for defamation would be time-barred does not necessarily mean that a cause of action related to a later defamatory statement would also be barred. But Count I alleges a civil conspiracy to defame, not defamation itself, and the statute of limitations for civil conspiracy accrues when the damages resulting from the defamatory act occur, not when the defamatory act itself occurs. *See Dunlap*, 287 Va. at 215; *see also Gallop*, 179 Va. at 338.

## 2. Tortious Interference

In Virginia, "[t]he common law has long recognized actions based on a conspiracy resulting in business-related damages." *Dunlap*, 287 Va. at 213. Interference with a business expectancy "is directed at and injures a property right." *Id.* at 221. Under Code § 8.01-243(B), "[e]very action for injury to property . . . shall be brought within five years after the cause of action accrues."

Code § 8.01-230 provides that in cases of damage to property, a right of action accrues, and the limitation period begins to run, "from the date the injury is sustained" unless otherwise provided by statute.[10] "The general principle, well recognized in Virginia law, deems the accrual of a cause of action for 'injury to property,' to take place when the first measurable damage occurs." *Forest Lakes*, 293 Va. at 123 (quoting Code § 8.01-243(B)).

Under Count I, the Davises allege that the Neighbors "conspired to interfere in the business interests of [the Davises] by repeatedly posting inflammatory and inaccurate information on public forums regarding . . . [Janette]'s fitness, character and qualifications as a [r]eal [e]state [a]gent specifically" and that the Neighbors' actions "significantly hindered [Janette]'s ability to conduct and grow her real estate business." As a result, the Davises suffered "monetary damages in the form of lost business," and they claim they are "entitled to recover compensatory damages, to include . . . loss of profits."

In the Davises' amended complaint, which we acknowledge lacks clarity, the general terms "lost business" and "business interests" may be read to include the Nighthawk business as well as the real estate business. To the extent that Count I alleges separate conspiracies to

---

[10] Interference with a business expectancy "is directed at and injures a property right." *Dunlap*, 287 Va. at 221. The circuit court recognized that the Davises were alleging damage to a property interest when it held that the "five-year window" applicable to property damage was the appropriate statute of limitations. *See* Code § 8.01-243(B).

interfere with each of the two businesses, we will determine the accrual date for the relevant cause of action from the date each business sustained the "first measurable damage." *Id.*

The first damage to the Nighthawk business occurred in June 2016, when Christy's emails did "damage to the Davises' business ventures" and "dissuaded current and potential clients from purchasing Nighthawk home security and entertainment products from [Janette], thus interfering with her livelihood and ability to earn a living." The limitations period for a cause of action for conspiracy to interfere with the Nighthawk business thus expired in June 2021, and because the complaint was initially filed on December 30, 2022, that cause of action is time-barred.

However, the first damage to the real estate business occurred sometime in January 2018. Wittkopf's January 5, 2018 Nextdoor post "caused catastrophic and irreversible damage to [the] real estate business by deterring potential clients from utilizing her services, thus resulting in commission losses and a significant impact on [her] ability to earn a living as a [r]ealtor." Similarly, Wittkopf's January 13, 2018 Nextdoor post was posted "for the purpose of causing irreversible damage to [Janette's] real estate business and ability to earn a living as a [r]ealtor," and generated many responses, including from other realtors. Doe's January 18, 2018 call to Griffin was "intended to cause the termination of any contractual relationship" between Janette and Re/Max. And Christy's January 30, 2018 post "led to irreversible damage to [Janette]'s . . . real estate business." Based on these dates of injury, the limitation period for a cause of action for conspiracy to interfere with the real estate business did not expire until January 2023, and the Davises' complaint was timely filed prior to that month.

The Neighbors contend that the fact that Janette became a real estate agent in 2017 does not constitute a new conspiracy, or restart the clock on the statute of limitations, for damage done prior to that date to her reputation as a salesperson generally. But the Neighbors never referred

- 13 -

to Janette generally as a "salesperson."  Rather, the June 2016 emails highlighted Janette's relationship with Nighthawk, while the January 2018 actions highlighted Janette specifically in her capacity as a "real estate agent" affiliated with Re/Max.  The Neighbors' specificity is evident in their language.  Their Nextdoor activity obviously targeted Janette in her capacity as a real estate agent, as shown by the posts referring to her as a "real estate agent" and referring to her affiliation with "the Re/Max Reston Office."  It was therefore in January 2018 that the Neighbors caused the "first measurable damage" to the real estate business, *Forest Lakes*, 293 Va. at 123, and it was then that the cause of action for common law civil conspiracy to injure that business accrued.

The Neighbors further contend that the cause of action accrued in June 2016 because "[t]hat is when the Davises allege they were first personally taunted, mocked, and harassed." But any instances of harm to the Davises personally, purportedly included to illustrate how the conspiracy to interfere with the real estate business formed, do not trigger the limitation period for a civil action related to that conspiracy because it is the damage arising as a result of the agreement—not the agreement itself, as in a criminal conspiracy—that is the trigger.  *See CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 28 (1993) ("The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." (quoting *Gallop*, 179 Va. at 338)).  Thus, because we identify when the civil cause of action accrued by looking to when the damage, not the agreement, occurred, we must conclude that the cause of action for conspiracy to interfere with the real estate business accrued when that business, not the Davises personally, was damaged.

To the extent the amended complaint alleges a common law civil conspiracy to interfere with the real estate business, that cause of action is not time-barred because the first alleged

damage to that business occurred in January 2018 and the complaint was timely filed within a five-year window of that date. But to the extent that the complaint relates to the Nighthawk business, that cause of action accrued in June 2016 and is therefore time-barred.

### B. Count II: Statutory Conspiracy

Code § 18.2-499 provides, in relevant part, that

> [a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . shall be jointly and severally guilty of a Class 1 misdemeanor.

A person injured by means of a violation of Code § 18.2-499 is entitled to civil relief under Code § 18.2-500, which provides that the plaintiff's "'damages' shall include loss of profits."

"[T]ortious interference with business expectancy qualif[ies] as an unlawful act for purposes of a business conspiracy claim under Code §§ 18.2-499 and -500." *Dunlap*, 287 Va. at 222. Because that tort "is directed at and injures a property right," *id.* at 221, a five-year limitation period applies. *See* Code § 8.01-243(B).

A cause of action for business conspiracy under Code §§ 18.2-499 and -500 accrues when a person "first sustain[s] injury to his business." *Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 77 (1987). The "right of action accrues when *any* damage, however slight, is sustained." *Id.* And federal courts applying Code §§ 18.2-499 and -500 "have consistently held that a right of action is 'afforded [under these statutes] only when malicious conduct is directed at one's *business*, not one's *person*,' and that the statute 'focuses upon conduct directed at property, *i.e.*, one's business' and applies only to 'conspiracies resulting in business-related damages.'" *Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985) (alteration in original) (citations omitted) (applying Virginia law). Conversely, where a complaint asserts an action for "injury to the professional reputation of the plaintiffs" but makes "no claim of a business-related injury," an

- 15 -

action under these code sections will not lie. *Id.* This is so because such a claim "relates to their employment and possible injury to their employment reputation," which "'[is to] be characterized as a personal right as opposed to a business interest' and is without the ambit of these state statutes." *Id.* (alteration in original) (citation omitted); *see also Ward v. Connor*, 495 F. Supp. 434, 439 (E.D. Va. 1980), *rev'd in part on other grounds*, 657 F.2d 45 (4th Cir. 1981), *cert. denied*, 455 U.S. 907 (1982). Code § 18.2-500 only "provides a remedy for wrongful conduct directed to the business," *Federated Graphics Cos. v. Napotnik*, 424 F. Supp. 291, 293 (E.D. Va. 1976), and, along with Code § 18.2-499, is only "applicable to *any* malicious conduct which injures a business," *id.* at 294.

Under Count II, the Davises assert that the Neighbors' "tortious interference caused actual harm to [the] real estate business and professional reputation."[11] As a result, the Davises suffered "monetary damages in the form of lost business."[12] The real estate business was first

---

[11] The conspiracy statute covers injury to a person's "reputation, trade, business or profession." Code § 18.2-499. "Examining the statute's plain language, as we must," *Matzuk v. Price*, 70 Va. App. 474, 484 (2019), we find that use of the word "or" does not, in and of itself, preclude the accrual of two separate causes of action: one for injury to one's reputation, and another for injury to her business. And to the extent a complaint "asserts an action for . . . damages for injury to the professional reputation of the plaintiffs," that is "in essence, an action in slander and libel" even if it is pled under Code §§ 18.2-499 and -500. *Buschi*, 775 F.2d at 1259. The actions by which the Neighbors damaged either of the Davises' reputations are not "malicious conduct which injures a business," so they are "merely incidental to" the cause of action under those code sections and are "not determinative of its nature." *See Federated Graphics Cos.*, 424 F. Supp. at 294. As discussed above, any cause of action arising from allegations that sound in defamation is time-barred, even if pled under Count II, because the relevant limitation period is only one year and the first defamatory action occurred when Christy sent her first emails to the Century Oak listserv in June 2016, more than one year before the complaint was filed.

[12] To the extent these allegations relate to the Nighthawk business, the "first measurable damage" to that business, *Forest Lakes*, 293 Va. at 123, occurred when Christy's June 2016 emails "dissuaded current and potential clients from purchasing Nighthawk home security and entertainment products from [Janette], thus interfering with her livelihood and ability to earn a living." The dissent urges that the allegations of a "continuous" conspiracy serve as a mechanism for finding that the first instance of any harm, whether to either business or to the Davises' professional reputations, triggers the accrual of their cause of action. But "when

injured in January 2018, when the Neighbors first began specifically referring to Janette in her capacity as a "real estate agent" affiliated with Re/Max, removed her Nextdoor posts from her Re/Max business account, and called Griffin to cause the termination of Janette's contract with Re/Max. It is therefore in January 2018 that the cause of action for statutory conspiracy to injure the real estate business accrued. *See Eshbaugh*, 234 Va. at 77.

As noted above, the Neighbors argue that Janette "did not 'restart' the statute of limitations or create a new cause of action" under Code §§ 18.2-499 and -500 "when she obtained a new job." But it is damage to a business itself, not an individual in her personal or professional capacity, that is the focus of a cause of action for statutory conspiracy. *Buschi*, 775 F.2d at 1259. And in this case, the Neighbors' Nextdoor activity in January 2018 caused a contemporaneous injury to the real estate business, forming the basis for the Davises' cause of action for conspiracy to injure that same business. Because both the Neighbors' January 2018 actions and resulting injury to the real estate business occurred within five years of the initial filing in December 2022, the statutory cause of action related to that injury is not time-barred.

Though the January 2018 injury to the real estate business may appear similar to the injury sustained by the Nighthawk business in 2016, it is not "[s]ubsequent, aggravating or compounding" upon a previous injury, *Forest Lakes*, 293 Va. at 124, but rather a new and

---

wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." *Robinson*, 297 Va. at 514-15 (quoting *Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 239 (1987)). This is especially true when the new injury occurs to a separate business entity entirely. Consequently, like its common law counterpart, the cause of action for statutory conspiracy to injure the Nighthawk business is time-barred. But we evaluate separately the cause of action for statutory conspiracy to injure the real estate business, because "a plea in bar can be sustained even if it presents a bar to recovery to only some, but not all, of the plaintiff's claims." *Smith*, 289 Va. at 252.

separate injury to a distinct target.[13] Our Supreme Court has adopted the prevailing view that a cause of action involving an injury of a "permanent character" accrues when the injury was first sustained, "even though 'the injury constantly and regularly recurs' over time." *Id.* at 126 (quoting *Va. Hot Springs Co. v. McCray*, 106 Va. 461, 467, 471 (1907)). And while "[s]ubsequent, compounding or aggravating damage — if attributable to the original instrumentality or human agency — does not restart a new limitation period for each increment of additional damage," it is also "possible for a new cause of action to accrue that looks remarkably like an earlier one but is nonetheless a standalone claim in its own right." *Id.* at 124. "When this occurs, the damage accompanying the new cause of action sets new accrual starting blocks for a separate limitation period." *Id.*

The Neighbors targeted the Nighthawk business via separate actions, on separate dates than those by which they targeted the real estate business. Christy's June 2016 email concerned Janette's relationship with Nighthawk. Separately, the Neighbors first targeted the real estate business via their January 2018 activity on Nextdoor, by highlighting Janette's occupation as a "real estate agent" and her affiliation with Re/Max. These separate actions had different effects on different types of clients: while the June 2016 emails "dissuaded current and potential clients from purchasing Nighthawk home security and entertainment products" from Janette, the January 2018 Nextdoor activity dissuaded "prospective real estate clients" from engaging Janette to help them purchase or sell real estate. And so, to the extent the amended complaint alleges a statutory conspiracy to injure the Davises in their real estate business, that cause of action is not

---

[13] It is true the Davises allege that Christy's June 2016 emails damaged their "business ventures" generally, rather than any one specific business. But we do not find that this broad allegation refers to the real estate business specifically, because the only "business venture" that existed in June 2016 was the Nighthawk business. What is more, no cause of action for injury to any business can possibly accrue before the relevant business exists, and Janette did not launch the real estate business until September 2017.

time-barred, because the complaint was filed within the five-year window that expired in January 2023.

## III.  CONCLUSION

For the foregoing reasons, insofar as the circuit court granted the Neighbors' plea in bar with respect to the Davises' cause of action for statutory and common law civil conspiracy to defame the Davises personally and interfere with the Nighthawk business, we affirm its judgment granting the Neighbors' pleas in bar as to those causes of action.  But insofar as the pleas were granted with respect to common law civil conspiracy to interfere with the real estate business and statutory conspiracy to injure that same business, we reverse the circuit court's judgment and remand the case for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

Friedman, J. dissenting.

The circuit court dismissed the Davises' suit for common law and statutory conspiracy, finding it was barred by the statute of limitations. The issue here is determining when the Davises' claims accrued. Under Virginia law accrual is triggered "when the first measurable damage occurs." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 123 (2017). Because I agree with the circuit court that the Davises' claims, as alleged in their first amended complaint, accrued before the 2018 events relied upon by my colleagues, I would affirm the circuit court's judgment.

The circuit court did not take evidence on the plea in bar, so we only consider the pleadings, *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 112 (2008), and our review is de novo, *Robinson v. Nordquist*, 297 Va. 503, 513 (2019). The following factual allegations in the first amended complaint guide my conclusion that, as pleaded, the on-going conspiracy arose and business losses and damage to the Davises' "ability to earn a living," and harm to their professional reputations accrued as early as 2016 and, at the latest, in the Fall of 2017; thus, the Davises' claims are time-barred:

- Mrs. Davis worked as a salesperson throughout her career, "transition[ing] from a career in eye care sales to security systems technology and, eventually, real estate." First amended complaint (FAC) ¶ 18. "[O]n April 25, 2016, Plaintiff Janette Davis entered into an independent contractor agreement with Nighthawk Security Systems, Inc. to sell home security and entertainment products to homeowners and homebuilders in the community . . . ." FAC ¶ 19.

- "[T]o kickstart sales, Plaintiff Janette Davis sent an email to a neighborhood listserv . . . on May 27, 2016, to advertise Nighthawk's home security and entertainment products to property owners within the Century Oak community." FAC ¶ 20.

- On May 31, 2016, appellee-Christy and a group of neighbors gathered in front of the Davis's property to taunt, mock, and harass the Davises. FAC ¶ 21. On June 4, 2016, Christy was "openly hostile and harassing towards the Plaintiffs, a fact which she admitted in an email to [appellee] J. Wittkopf[.]" FAC ¶ 23.

- On June 4, 2016, Christy sent an email to the neighborhood listserv as part of an "effort to harass and gang up on the Plaintiffs." FAC ¶ 25. "At the end of Defendant J. Christy's email blast, she intentionally attached . . . Davis's May 27, 2016, email to the . . . listserv announcing that she was selling Nighthawk Security Systems products." FAC ¶ 26.

- The same day, Christy sent another email that "falsely implied that the Plaintiffs were criminally harassing Defendant J. Christy, *which accelerated the formation of a conspiracy to harass and defame the Davises by the Defendant neighbors*." FAC ¶ 28 (emphasis added).

- "*The extent of this harassment further expanded to include damage to the Davises' business venture and professional reputations.* Defendant J. Christy's emails also *dissuaded current and potential clients from purchasing Nighthawk home security and entertainment products from Mrs. Davis, thus interfering with her livelihood and ability to earn a living.*" FAC ¶ 30 (emphasis added).

- "As demonstrated by her emails, as early as June 2016, Defendant J. Christy was organizing and encouraging neighbors to harass, stalk, bully, injure and defame the Davises." FAC ¶ 31.

- "On June 28, 2016, Defendant(s) Doe . . . published a post" online "wherein false allegations of criminal behavior by Plaintiffs were made." FAC ¶ 41.

- "Later, in a series of emails sent between September 7, 2017, and September 9, 2017, Defendants J. Christy and W. Gardiner *concocted a plan to damage the Plaintiffs' personal and professional reputations* by posting false and defamatory statements online accusing both Plaintiffs of committing criminal acts." FAC ¶ 44 (emphasis added).

- "On September 15, 2017, Defendant J. Christy posted her first defamatory post on Nextdoor.com, wherein she accuses Plaintiffs of committing criminal acts." FAC ¶ 51.

- "Between September 2017 and March 2018, Defendant J. Christy published nine more 'Disturbing Behavior' posts on Nextdoor.com with other false and defamatory claims of criminal activity allegedly committed by the Plaintiffs, including stalking and harassment." FAC ¶ 56.

- Mrs. Davis launched her real estate business on September 27, 2017. FAC ¶ 59.

- In September 2017, appellee-Gardiner created a fake persona on NextDoor to mock and cyber-bully the Plaintiffs. FAC ¶ 66. A post by Gardiner on September 28, 2017, "wrongfully accuse[d] Plaintiffs of following and threatening members

of the community—a criminal offense—and was knowingly published by Defendant W. Gardiner to belittle, harass, *and cause injury to the Plaintiffs and to their personal and professional reputations*." FAC ¶ 73 (emphasis added).

- "In total, Defendant W. Gardiner fraudulently published seven (7) posts and replies as 'Terry Smith' that were designed to belittle, harass, and falsely accuse the Plaintiffs of committing criminal activity, thereby *causing irreversible damage to both their personal and professional reputations*." FAC ¶ 76 (emphasis added).

- On September 30, 2017, appellee-J. Wittkopf created an alias on Nextdoor and "post[ed] defamatory comments about the Plaintiffs, thereby attacking their personal and *professional reputations* . . . ." FAC ¶ 93 (emphasis added).

- In the context of alleging facts in October 2017, "[d]efendants *continuously conspired* with one another through this alliance as Nextdoor Leads and Moderators to defame and harass the Plaintiffs. Defendants were aware that their actions were wrongful and illegal but continued to direct harm at the Davises regardless." FAC ¶ 107.

- "[A] series of texts [in October 2017] demonstrate that, as stated by the Defendants themselves, Defendants knowingly and maliciously acted as a 'united front' against the Davises to defame and harass them into eventually selling their forever home . . . ." FAC ¶ 110 (brackets added).

In the Davises' first amended complaint, they assert claims for common law civil conspiracy and conspiracy to injure business in violation of Code §§ 18.2-499, -500. The factual allegations from the entire complaint were incorporated in support of both claims. In other words, events from 2016 and 2017 were made a part of each count, and the conspiracy is couched as an ongoing venture.

A common law civil conspiracy generally requires the commission of an underlying tort. *See Almy v. Grisham*, 273 Va. 68, 80 (2007). Code § 18.2-499, a criminal statute, forms the basis for count two and requires establishing that there was a conspiracy to injure another in his "reputation, trade, business or profession by any means whatever . . . ." Code § 18.2-500 provides a civil damages action for a violation of Code § 18.2-499 and states that "[a]ny person who shall be injured in his reputation, trade, business or profession" may seek damages caused

- 22 -

by the violation.[14]  Because the common law conspiracy claim requires an underlying tort and the statutory claim requires injury to "reputation, trade, business or profession," it is essential to examine how the Davises pleaded their claims.

In Count I, the Davises assert a claim for common law civil conspiracy that alleged, among other losses, damage to business interests, lost business generally, and damage to professional reputation:

- "Defendants acted in concert to defame Plaintiffs, by stating they were unfit to perform *the duties of their business (trade)* and falsely accused them of criminal offenses."  FAC ¶ 175 (emphasis added).

- "As a result of Defendants' conspiratorial actions to defame the Plaintiffs, Plaintiffs have suffered: (1) immense humiliation and grave irreversible damage to their personal and professional reputations; (2) monetary damages *in the form of lost business*; and (3) damage to the Plaintiffs' property."  FAC ¶ 176 (emphasis added).

- "Defendants conspired to interfere in *the business interests* of Mr. and Mrs. Davis by repeatedly posting inflammatory and inaccurate information on public forums regarding the Davises generally, and Mrs. Davis's fitness, character and qualifications as a Real Estate Agent specifically.  These acts, taken in concert, effectively damaged both Mr. and Mrs. Davis's personal and *professional reputations* and significantly hindered Mrs. Davis's ability to conduct and grow her real estate business."  FAC ¶ 177 (emphasis added).

In Count II, they assert a claim for statutory conspiracy to injure another in business that echo these general losses, albeit with more specific mention of the real estate business:

- "Defendants' actions of defamation and tortious interference caused actual harm to Plaintiff Mrs. Davis's real estate business and professional reputation."  FAC ¶ 182.

- "Defendants acted in concert to willfully and maliciously injure Plaintiffs in their *reputation and Business (trade)*."  FAC ¶ 183 (emphasis added).

- "As a result of Defendants' actions conspiring to cause harm to Plaintiff Janette Davis's real estate business, Plaintiffs' have suffered: (1) immense humiliation and grave damage to their *personal and professional reputations*; and (2) *monetary damages in lost business*."  FAC ¶ 187 (emphasis added).

---

[14] As to damages, the statute provides that "without limiting the generality of the term, 'damages' shall include loss of profits."  Code § 18.2-500.

"Every action for injury to property . . . shall be brought within five years after the cause of action accrues."[15]  Code § 8.01-243(B).  "The general principle, well recognized in Virginia law, deems the accrual of a cause of action for 'injury to property' to take place when the first measurable damage occurs."  *Forest Lakes*, 293 Va. at 123.  "At that point, the limitation period begins to run.  Subsequent, compounding or aggravating damage—if attributable to the original instrumentality or human agency—does not restart a new limitation period for each increment of additional damage."  *Id.*

> That conclusion remains true even if the damage is expected to continue beyond the end of any remedial litigation.  In such cases, the claimant should forecast and claim a damage award for past, present, and future damages.  An important caveat, however, accompanies this general principle.  It is possible for a new cause of action to accrue that looks remarkably like an earlier one but is nonetheless a standalone claim in its own right.  When this occurs, the damage accompanying the new cause of action sets new accrual starting blocks for a separate limitation period.

*Id.*

Based on the Davises' first amended complaint, including the underlying factual allegations and the way in which the claims were pleaded, I would hold that the Davises were damaged, for accrual purposes, at least by September 2017.  The first amended complaint states that in 2016 "the formation of a conspiracy to harass and defame" had accelerated and this "dissuaded current and potential clients from purchasing Nighthawk home security and entertainment products from Mrs. Davis."  FAC at ¶¶ 28, 30.  Moreover, in September 2017, appellees concocted a plan to damage the Davises' professional reputation by posting defamatory statements accusing them of committing crimes.  FAC ¶ 44.

---

[15] Because the circuit court applied arguendo a five-year period on both claims and no cross-error was assigned by appellees, we are bound to apply a five-year limitations period.  *See Rest. Co. v. United Leasing Corp.*, 271 Va. 529, 534 n.4 (2006) (explaining that where no party assigns error to the statute of limitations period applied by the circuit court, that limitations period becomes the law of the case on appeal).

The Davises seem to concede that a conspiracy had formed by the Fall of 2017. They suggest, however, that the conspiracy was not to harm the real estate business specifically until later. This argument raises several red flags as to the manner in which the conspiracy was pleaded and with Mrs. Davis' repeated emphasis on her reputation as a dynamic salesperson who is damaged by any allegations that would make customers doubt her honesty or integrity. Moreover, the Davises suggest that they can plead a single ongoing conspiracy, but then carve out separate enclaves for the security business, real estate business or any future business she might initiate and thereby accrue a new five-year limitations period.[16]

My reading of the first amended complaint is that both conspiracy claims relate broadly to business harms generally, such that the loss of business for security sales is relevant to when the first damage occurred. For example, allegations in paragraph 30 state that the 2016 actions of the conspirators interfered "with her livelihood and ability to earn a living" and that this damaged the Davises' business ventures and dissuaded customers from buying security equipment. In September of 2017, repeated acts by the conspirators allegedly caused "irreversible damage" to the Davises' "professional reputations." FAC ¶¶ 73, 76. In Count I and Count II, the Davises sought "monetary damages in lost business," without breaking out separate business claims. FAC ¶¶ 176, 187. Again, all allegations involving pre-real estate incidents were incorporated into each count.

The professional reputational harm that occurred in September 2017 is particularly relevant because the Davises plead in each count that harm to their professional reputations impacted "business" generally. Many of the September 2017 misdeeds alleged in the first amended complaint occurred while the real estate business was active. *See, e.g.*, FAC ¶¶ 72-73,

---

[16] Again, it is possible that the Davises could have pleaded separate standalone claims, but that is not what they did here.

76, 93, 107. Given that the first amended complaint discusses harms to multiple businesses based on the neighbors' conduct, I simply disagree that the first amended complaint should be read to exclusively seek relief from harms to the real estate business only. While the first amended complaint could have been limited to only the real estate business, that did not happen here, and so we are bound to look at the complaint in its entirety, rather than isolating certain portions of it as the Davises ask. For example, in Count II, the Davises seek "monetary damages in lost business," not lost real estate sales. *See* FAC ¶ 187. As pleaded, the "first measurable damage of these conspiracies," *Forest Lakes*, 293 Va. at 123, occurred long before the incidents in 2018.[17]

Second, assuming arguendo that the first amended complaint only relates to the real estate business, this argument still is unavailing in my view because the Davises allege, on September 28, 2017, after Mrs. Davis created her real estate business, that appellee Gardiner posted on Nextdoor using an alias, and "[t]his post wrongfully accuse[d] Plaintiffs of following

---

[17] The majority correctly asserts that "a plea in bar can be sustained even if it presents a bar to recovery to only some, but not all of plaintiff's claims." *Smith v. McLaughlin*, 289 Va. 241, 252 (2015). *McLaughlin*, however, dealt with multiple claims, some of which were extinguished by the pleas in bar, and some of which were not—but that opinion does not authorize or call upon a trial court to split a single claim and reconstruct it in a manner that the plaintiff never adopted. The majority, here, suggests the claims should be analyzed as a nonrecurring conspiracy involving claims for both defamation and tortious interference with separate individual claims as to multiple, distinct Davis enterprises, despite the Davises' failure to plead these separate claims. Here, the Davises alleged that the appellees "continuously conspired" to drive them from the neighborhood and damage them in their business interests and reputations. They reincorporated all prior allegations of harm to their business and reputation into each count. In my view, the case law regarding interval, non-continuous damage should not be applicable to this factual scenario where plaintiff's own pleading states the conspiracy was continuous. *Compare Robinson*, 297 Va. at 514-15 ("[W]hen wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." (quoting *Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 239 (1987))), *with Forest Lakes*, 293 Va. at 124 ("Subsequent, compounding or aggravating damage—if attributable to the original instrumentality or human agency—does not restart a new limitation period for each increment of additional damage."). In my view, the circuit court, here, properly analyzed the pleading in front of it.

and threatening members of the community—a criminal offense—and was knowingly published by Defendant W. Gardiner to belittle, harass, and cause injury to the Plaintiffs and to their personal and professional reputations." FAC ¶ 73. Relatedly, appellee Wittkopf, on September 30, 2017, "post[ed] defamatory comments about Plaintiffs, thereby attacking their personal and professional reputations . . . ." FAC ¶ 93. A text message from appellee Gardiner on October 11, 2017, "demonstrate[d] the level of coordination between the Defendants to silence the Plaintiffs and keep defamatory posts about them active." FAC ¶ 100. In October, appellees also "continuously conspired with one another through this alliance as Nextdoor Leads and Moderators to defame and harass the Plaintiffs," and appellees "were aware their actions were wrongful and illegal but continued to direct harm at the Davises regardless." FAC ¶ 107. This, again, was in the context of an on-going conspiracy to damage the Davises' business reputations and drive them from the neighborhood. These events of September-October, 2017 occurred more than five years before the Davises' filed their lawsuit.

Ultimately, I would find that the Davises' claims began to run, at the latest, by the Fall of 2017, because by that time the appellees' conspiracy had formed and the Davises had incurred damage as alleged in the first amended complaint; as a result, I would hold that the first amended complaint filed on December 30, 2022, was barred by the applicable statute of limitations.[18] I would affirm the circuit court's judgment, and thus I respectfully dissent.

---

[18] No argument was raised by the Davises on appeal that the statute of limitations was tolled or extended for any reason.